1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   20827 North Cave Creek Road, Suite 101
3  Phoenix, AZ  85024

4  Telephone:  (602) 482-4300
   Facsimile:    (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Ken Hillyer*

7

8                     UNITED STATES DISTRICT COURT

9                          DISTRICT OF ARIZONA

10
                                           Case No.
11 Ken Hillyer,

12            Plaintiff,                   **COMPLAINT**

13      v.

14 Prudential Insurance Company of America,
   DPWN Holdings (USA), Inc., Employee
15 Disability Plan, DPWN Holdings (USA),
   Inc., dba DHL Holdings,
16
              Defendants.
17

18      Now comes the Plaintiff Ken Hillyer (hereinafter referred to as "Plaintiff"), by and

19 through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

20                              *Jurisdiction*

21      1.    Jurisdiction of the court is based upon the Employee Retirement Income

22 Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23 Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24 employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

3.
4    2. Plaintiff is a resident of Maricopa County, Arizona.

5    3. Upon information and belief, Defendant DPWN HOLDINGS (USA), INC.
6  (hereinafter referred to as the "Company") sponsored, subscribed to and administered a
7  group disability insurance policy which was fully insured and administered by Prudential
8  Insurance Company (hereinafter referred to as "Prudential").  The specific Prudential
9  policy is known as Group Policy 99617.  The Company's purpose in subscribing to the
10  Prudential policy was to provide disability insurance for its employees.  Upon information
11  and belief, the Prudential policy may have been included in and part of the DPWN
12  HOLDINGS (USA), INC., Employee Disability Plan (hereinafter referred to as the
13  "Plan") which may have been created to provide the Company's employees with welfare
14  benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit
15  plan" as defined by 29 U.S.C. §1002(1).

16    4. Upon information and belief, the Company or Plan may have delegated
17  responsibility for the plan and/or claim administration of the policy to Prudential.  Plaintiff
18  believes that as it relates to his claim, Prudential functioned in a fiduciary capacity as the
19  Plan and/or Claim Administrator.

20    5. Upon information and belief, Plaintiff believes Prudential operated under a
21  conflict of interest in evaluating his claim due to the fact it operated in dual roles as the
22  decision maker with regard to whether Plaintiff was disabled as well as the payor of
23  benefits; *to wit,* Prudential's conflict existed in that if it found Plaintiff was disabled it was
24  also liable for payment of those benefits.

6. The Company, Plan and Prudential conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about May 29, 2009 due to serious medical conditions and was unable to work in his designated occupation as a Systems Engineer Developer. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10. Following his disability, Plaintiff applied for short term and long term disability benefits.

11. The relevant short term disability plan provides the following definition of a covered disability which applies to Plaintiff's claim:

> During the elimination period, you are disabled when Prudential determines that:
> - you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed weekly earnings due to that sickness or injury.

12. In support of his claim for short term disability, Plaintiff submitted to Prudential medical records from his treating physicians supporting his disability as defined by the relevant Prudential policy.

13. Prudential notified Plaintiff in a letter dated July 15, 2009 that it was denying his claim for short term disability benefits and thus precluding Plaintiff's eligibility for long term disability benefits.

14. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the July 15, 2009 denial of his claim for short term disability benefits in a letter dated August 17, 2009.

15. Prudential notified Plaintiff in a letter dated September 22, 2009 that it needed further information in order to review Plaintiff's appeal for *short term* disability benefits and to make a determination.

16. Prudential notified Plaintiff in a letter dated October 14, 2009 that it needed further information in order to review Plaintiff's claim for *long term* disability benefits.

17. Prudential notified Plaintiff in a letter dated December 7, 2009 that it had completed Plaintiff's first request for reconsideration and that Prudential was upholding its decision to deny Plaintiff's claim for short term disability benefits.

18. In a letter dated April 29, 2010, Plaintiff formally appealed the denial of his claim and requested a sixty (60) day extension to submit all evidence on his appeal.

19. Prudential notified Plaintiff in a letter dated May 18, 2010 that it granted Plaintiff's request for a (60) day extension and would provide an extension of the appeal period to June 28, 2010.

20. In support of his appeal, Plaintiff submitted to Prudential an April 13, 2010 Notice of Award from the Social Security Administration stating, "we found that you became disabled under our rules on May 29, 2009."

21. In support of his appeal, Plaintiff submitted to Prudential a narrative letter dated April 12, 2010 from Plaintiff's treating board certified rheumatologist, who opined, "based on his history and chronic pain, he has been ***unable to work in any occupation*** since his last work day on May 29th…Given [Plaintiff's] current condition, one could conclude that ***he is unable [to] sustain gainful employment***" (emphasis added).

22. In further support of his appeal, Plaintiff submitted to Prudential a Functional Capacity Report dated March 4, 2010 which determined after an evaluation of Plaintiff's ability to work in any occupation given serious medical conditions, that he "would be INCAPABLE of performing any type of work on a regular and consistent basis…the main limiting functional factors keeping him from performing even SEDENTARY work are as follows: inability to sit for greater than 2/3 of the work day, inability to stand for greater than 1/3 of the work day, as well as his low aptitude for ambulation agility, stamina, and endurance, low aptitude for keyboarding speed and finger dexterity, as well as his low tolerance for forward bending/stooping and keeling/crouching." (original emphasis).

23. In further support of his appeal, Plaintiff submitted a Disability – Hearing Impaired Place/Placard Application completed by his board certified family physician wherein Plaintiff's physician marked ***"permanently physically disabled"*** when asked to address Plaintiff's medical condition (emphasis added).

24. Further supporting his appeal, Plaintiff submitted to Prudential a vocational report dated May 3, 2010 where the vocational expert concluded, "based on my review of [Plaintiff's] medical record and interview of [Plaintiff], I conclude that he is ***unable to perform any type of occupation even sedentary work*** on a consistent, full time basis…he

has been unable to engage in any gainful employment since May 29, 2009 as attested by his treating physicians" (emphasis added).

25. In addition to the medical records and reports submitted to Prudential, Plaintiff also submitted sworn Affidavits from lay persons including an April 19, 2010 Affidavit from a friend who has known Plaintiff for over nineteen (19) years wherein the affiant opined Plaintiff is unable to work in any occupation. Plaintiff also submitted a May 24, 2010 Affidavit from his wife wherein she rendered the same opinion and that his medical condition has continued to deteriorate.

26. In a letter dated August 20, 2010, Prudential notified Plaintiff it was unable to complete the appeal review within the ninety (90) day deadline by August 25, 2010, and requested an extension to September 25, 2010.

27. In a letter dated August 30, 2010, Plaintiff notified Prudential he agreed to grant Prudential's request in an effort to allow it to conduct a full and fair review of Plaintiff's claim.

28. In evaluating Plaintiff's claim on appeal, Prudential had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in [his] best interests and other participants" which it failed to do.[1] On October 26, 2010, after being in possession of Plaintiff's evidence for 154 *days* on appeal (evidence was submitted on May 25, 2010) and exceeding any

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  timeframe for review, including extensions permitted by ERISA, the Plan still had not
2  made a decision in his claim.

3      29. On October 26, 2010, Plaintiff notified Prudential that he deemed his claim
4  exhausted because the Plan failed to make a timely decision as required by ERISA,
5  specifically 29 C.F.R. § 2560.503-1.

6      30. Plaintiff believes the reason the Plan provided an unlawful review which was
7  neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1 and
8  never made a decision on his claim, is due to the aforementioned dual roles it undertook as
9  decision maker and payor of benefits which created an inherent conflict of interest and this
10 conflict may also be a reason the Plan retained Prudential to administer his disability claim.

11     31. Plaintiff is entitled to discovery regarding the aforementioned conflicts of
12 interest of Prudential and any individual who reviewed his claim and the Court may
13 properly weigh and consider evidence regarding the nature, extent and effect of *any*
14 conflict of interest which may have impacted or influenced Prudential's decision to deny
15 his claim.

16     32. With regard to whether Plaintiff meets the definition of disability set forth in
17 the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if
18 the Court concludes the Plan or Prudential policy confers discretion, the unlawful
19 violations of ERISA committed by the Plan and its administrators as referenced herein are
20 so flagrant they justify *de novo* review.

21     33. As a direct result of Prudential's decision to deny Plaintiff's disability claim
22 and its failure to make any decision on appeal, he has been injured and suffered damages in
23 the form of lost disability benefits, in addition to other potential employee benefits he may
24 have been entitled to receive through or from the Plan and/or Company as a result of being
25 found disabled.

26

1    34. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

35. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' unjustified limited payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Plan and/or Prudential policy from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits he may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time he meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 27th day of October, 2010.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
      Scott E. Davis
      Attorney for Plaintiff